# EXHIBIT A

FILED
12/1/2023 4:29 PM
FELICIA PITRE
DISTRICT CLERK
DALLAS CO., TEXAS
Faith Livingstone DEPUTY

47 CIT - ESERVE

CAUSE NO. DC-23-20003 _____

| | | |
|---|---|---|
| **WAZU CAPITAL PARTNERS, INC.** | § | **IN THE DISTRICT COURT** |
| **MT MEDICAL PROPERTIES, LLC** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| | § | |
| **v.** | § | |
| | § | |
| **RYAN COLE, JOHN MONTEIRO,** | § | |
| **CORY COUNTRYMAN, KERRY** | § | |
| **NOBLE, MIKE ATKINS, MARSUE** | § | |
| **HEFNER, MELISSA UPSHAW,** | § | |
| **BRANDON DEITERS, MOLLY MINER,** | § | |
| **PLATINUM MEDICAL** | § | |
| **MANAGEMENTINC., GOLDEN** | § | |
| **HARBOR VENTURES, LP,** | § | |
| **4X VENTURES, LLC, PLATINUM** | § | |
| **TEAM MANAGEMENT, INC.,** | § | |
| **PLATINUM HEALTHCARE,** | § | |
| **CORP., MAINSTREET** | § | |
| **HEALTHVENTURES, LLC,** | § | |
| **PARAMOUNT REAL ESTATE** | § | 193rd |
| **HOLDINGS VII, LLC, KENNETT** | § | ____TH JUDICIAL DISTRICT |
| **HEALTHCARE AFFILIATES, LLC,** | § | |
| **SARENITY HERBAL APOTHECARY** | § | |
| **LLC, BIG WORLD FOOD** | § | |
| **SERVICES, LLC, DAYDRA** | § | |
| **MANAGEMENT LLC,** | § | |
| **BILLIONAIRES FUNDING GROUP** | § | |
| **LLC, PLATINUM CONCEPTS LLC,** | § | |
| **PLATINUM MOTORSPORTS LLC,** | § | |
| **BIG WORLD DEVELOPMENT,** | § | |
| **INC., PLATINUM TEAM** | § | |
| **MANAGEMENT, INC.,** | § | |
| **PARAMOUNT REAL ESTATE** | § | |
| **HOLDINGS, LLC, PARAMOUNT** | § | |
| **REAL ESTATE HOLDINGS II, LLC,** | § | |
| **PARAMOUNT REAL ESTATE** | § | |
| **HOLDINGS III LLC, PARAMOUNT** | § | |
| **REAL ESTATE HOLDINGS IV LLC,** | § | |
| **PARAMOUNT REAL ESTATE** | § | |
| **HOLDINGS V LLC, PARAMOUNT** | § | |
| **REAL ESTATE HOLDINGS VI, LLC,** | § | |

| | | |
|---|---|---|
| **PARAMOUNT REAL ESTATE** | § | |
| **HOLDINGS VII, LLC, SERENE** | § | |
| **DISTRICT TOWNHOMES,** | § | |
| **DISTRICT LIFESTYLE WYLIE LLC,** | § | **DALLAS COUNTY, TEXAS** |
| **THE RESIDENCES AT OVATION,** | § | |
| **LLC, PLATINUM SENIOR** | § | |
| **LIVING WYLIE LLC, PLATINUM** | § | |
| **SENIOR LIVING PRINCETON LLC,** | § | |
| **PLATINUM SENIOR LIFE LLC,** | § | |
| **PLATINUM HEALTH SYSTEMS LLC,** | § | |
| **PLATINUM SENIOR LIFE LLC,** | § | |
| **MILAGRO MIO, PLLC,** | § | |
| **MILAGRO MIO 2, PLLC,** | § | |
| **SAMUEL D. EVANG, LLC,** | § | |
| **NEIGHBORS VISITING DOCTORS, LLC,** | § | |
| **ROSEMARY & ROOT LLC,** | § | |
| **SADDLE STAR LAND** | § | |
| **DEVELOPMENT, LLC, MAYBERRY** | § | |
| **GARDENS, INC., and** | § | |
| **CORRECTLIFE MISSOURI** | § | |
| **HOLDINGS, LLC**, | § | |
| | § | |
| **Defendants.** | § | |

## PLAINTIFFS' ORIGINAL PETITION AND EMERGENCY APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIVE RELIEF

**TO THE HONORABLE JUDGE OF SAID COURT:**

**COMES NOW,** WaZu Capital Partners, Inc. and MT Medical Properties, LLC (collectively, "Plaintiffs"), and files this *Plaintiffs' Original Petition* (the "Petition") and *Emergency Application for Temporary and Permanent Injunctive Relief* (the "Application") complaining of and against the Defendants named herein (collectively, "Defendants"), and, for cause, would respectfully show the Court as follows:

## I.
## DISCOVERY CONTROL PLAN

1.      Discovery in this case is intended to be conducted under a Level 3 Discovery

Control Plan pursuant to Rule 194.4 of the Texas Rules of Civil Procedure.

## II.
## RULE 47 NOTICE

2.      Pursuant to Texas Rule of Civil Procedure 47, Plaintiff seeks monetary relief in excess of $1,000,000.00.

## III.
## PARTIES

3.      Plaintiff Wazu Capital Partners, Inc. ("Plaintiff Wazu")is a Texas Corporation with its principal place of business in Dallas, Dallas County, Texas.

4.      Plaintiff MT Medical Properties, LLC ("Plaintiff MT") is a Wyoming limited liability company with its principal place of business in Dallas, Dallas County, Texas.

5.      Defendant Ryan Cole ("Defendant Cole" or "Cole") is an individual who may be served at 709 Business Way, Wylie, Texas 75098 or 801 S. Hwy. 78, Suite 307, Wylie, Texas 75098. Issuance of citation is requested at this time.

6.      Defendant John Monteiro ("Defendant Monteiro" or "Monteiro") is an individual who may be served at 10003 Harbor Hideaway, Frisco, Texas 75034. Issuance of citation is requested at this time.

7.      Defendant Cory Countryman ("Defendant Countryman" or "Countryman") is an individual, who may be served at 7810 Harbor Dr. Rowlett, Texas 75088. Issuance of citation is requested at this time.

8.      Defendant Kerry Noble is an individual who may be served wherever he may be found. Issuance of citation is requested at this time.

9.      Defendant Mike Atkins is an individual, who may be served at wherever he may be found. Issuance of citation is requested at this time.

10.      Defendant Marsue Hefner is an individual, who may be served wherever she may be found. Issuance of citation is requested at this time.

11.      Defendant Mellissa Upshaw is an individual, who may be served at _____. Issuance of citation is requested at this time.

12.      Defendant Brandon Deiters is an individual who may be served at 709 Business Way, Wylie, Texas 75098 or 801 S. Hwy. 78, Suite 307, Wylie, Texas 75098. Issuance of citation is requested at this time.

13.      Defendant Molly Miner is an individual, who may be served wherever she may be found. Issuance of citation is requested at this time.

14.      Defendant Golden Harbor Ventures, LP is a Texas Limited Partnership which may be served through its registered agent, Richfield Commercial, LLC, 801 S. Highway 78, Building A, Wylie, Texas 75098. Issuance of citation is requested at this time.

15.      Defendant Platinum Medical Management Inc. ("Defendant PMM") is a Texas Corporation which may be served through its registered agent, Brandon C. Deiters, 709 Business Way, Wylie, Texas 75098. Issuance of citation is requested at this time.

16.      Defendant 4X Ventures, LLC ("Defendant 4X") is a Texas Limited Liability Company which may be served through its registered agent, David A. Krueger, 12221 Merit Drive, Suite 825, Dallas, Texas 75251. Issuance of citation is requested at this time.

17.      Defendant Platinum Team Management, Inc. is a Texas Corporation which may be served through its registered agent, Jerry Goh, 777 S. Central Expy., Suite 1-D, Richardson, Texas

75080. Issuance of citation is requested at this time.

18.     Defendant Platinum Healthcare, Corp. is a Texas Corporation which may be served through its registered agent, Rami Almuhtadi, 15305 Dallas Pkwy., Suite 1200, Addison, Texas 75001. Issuance of citation is requested at this time.

19.     Defendant Mainstreet HealthVentures, LLC is a Missouri Limited Liability Company which may be served through its registered agent, Kerry L. Noble, 1301 First St., Kennett, Missouri, 63857. Issuance of citation is requested at this time.

20.     Defendant Paramount Real Estate Holdings VII, LLC is a Texas Limited Liability Company which may be served through its registered agent, Platinum Team Management Inc., 801 S. Hwy. 78, Suite 307, Wylie, Texas 75098. Issuance of citation is requested at this time.

21.     Defendant Kennett Healthcare Affiliates, LLC is a Missouri Limited Liability Company which may be served through its registered agent, Kerry L. Noble, 1301 First St., Kennett, Missouri, 63857. Issuance of citation is requested at this time.

22.     Defendant Sarenity Herbal Apothecary LLC is a Texas Limited Liability Company which may be served through its registered agent, Brandon Deiters, 801 S. Hwy. 78, Suite 307, Wylie, Texas 75098. Issuance of citation is requested at this time.

23.     Defendant Big World Food Services, LLC is a Texas Limited Liability Company which may be served through its registered agent, Brandon Deiters, 801 S. Hwy. 78, Suite 307, Wylie, Texas 75098. Issuance of citation is requested at this time.

24.     Defendant Daydra Management LLC is a Texas Limited Liability Company which may be served through its registered agent, Platinum Team Management, Inc., 801 S. Hwy. 78, Suite 307, Wylie, Texas 75098. Issuance of citation is requested at this time.

25.     Defendant Billionaires Funding Group LLC  is a Georgia Limited Liability Company which may be served through its registered agent, Shaneel M. Lalani, 34 Peachtree St. NW, Suite 2800, Atlanta, Georgia 30303. Issuance of citation is requested at this time.

26.     Defendant Platinum Concepts LLC is a Texas Limited Liability Company which may be served through its registered agent, Brandon Deiters, 801 S. Hwy. 78, Suite 307, Wylie, Texas 75098. Issuance of citation is requested at this time.

27.     Defendant Platinum Motorsports LLC is a Texas Limited Liability Company which may be served through its registered agent, Capitol Corporate Services, Inc., 1501 S. Mopac Expy., Ste. 220, Austin, Texas 78746. Issuance of citation is requested at this time.

28.     Defendant Big World Development, Inc. is a Texas Corporation which may be served through its registered agent, Brandon Cruz Deiters, 709 Business Way, Wylie, Texas 75098. Issuance of citation is requested at this time.

29.     Defendant Platinum Team Management, Inc. is a Texas Corporation which may be served through its registered agent, Jerry Goh, 777 S. Central Expy., Suite 1-D, Richardson, Texas 75080. Issuance of citation is requested at this time.

30.     Defendant Paramount Real Estate Holdings, LLC is a Texas Limited Liability Company which may be served through its registered agent, Brandon Deiters, 709 Business Way, Wylie, Texas 75098. Issuance of citation is requested at this time.

31.     Defendant Paramount Real Estate Holdings II, LLC is a Texas Limited Liability Company which may be served through its registered agent, Brandon Deiters, 801 S. Hwy. 78, Suite 307, Wylie, Texas 75098. Issuance of citation is requested at this time.

32.     Defendant Paramount Real Estate Holdings III LLC is a Texas Limited Liability

Company which may be served through its registered agent, Brandon Deiters, 1324 Iron Dale Dr., Wylie, Texas 75098. Issuance of citation is requested at this time.

33.     Defendant Paramount Real Estate Holdings IV LLC is a Texas Limited Liability Company which may be served through its registered agent, Brandon Deiters, 1324 Iron Dale Dr., Wylie, Texas 75098. Issuance of citation is requested at this time.

34.     Defendant Paramount Real Estate Holdings V LLC is a Texas Limited Liability Company which may be served through its registered agent, Platinum Team Management Inc., 801 S. Hwy. 78, Suite 307, Wylie, Texas 75098. Issuance of citation is requested at this time. (ADDED)

35.     Defendant Paramount Real Estate Holdings VI, LLC is a Texas Limited Liability Company which may be served through its registered agent, Brandon Deiters, 1324 Iron Dale Dr., Wylie, Texas 75098. Issuance of citation is requested at this time.

36.     Defendant Paramount Real Estate Holdings VII, LLC is a Texas Limited Liability Company which may be served through its registered agent, Platinum Team Management Inc., 801 S. Hwy. 78, Suite 307, Wylie, Texas 75098. Issuance of citation is requested at this time.

37.     Defendant Serene District Townhomes is a Texas Limited Liability Company which may be served through its registered agent, Brandon Deiters, 801 S. Hwy. 78, Suite 307, Wylie, Texas 75098. Issuance of citation is requested at this time.

38.     Defendant District Lifestyle Wylie LLC is a Texas Limited Liability Company which may be served through its registered agent, Brandon Deiters, 801 S. Hwy. 78, Suite 307, Wylie, Texas 75098. Issuance of citation is requested at this time.

39.     Defendant The Residences at Ovation, LLC is a Texas Limited Liability Company which may be served through its registered agent, Platinum Team Management Inc., 801 S. Hwy. 78,

Suite 307, Wylie, Texas 75098. Issuance of citation is requested at this time.

40.     Defendant Platinum Senior Living Wylie LLC, is a Texas Limited Liability Company which may be served through its registered agent, Platinum Neighbors, Inc., 801 S. Hwy. 78, Suite 307, Wylie, Texas 75098. Issuance of citation is requested at this time.

41.     Defendant Platinum Senior Living Princeton LLC, is a Texas Limited Liability Company which may be served through its registered agent, Platinum Neighbors, Inc., 801 S. Hwy. 78, Suite 307, Wylie, Texas 75098. Issuance of citation is requested at this time.

42.     Defendant Platinum Senior Life LLC is a Texas Limited Liability Company which may be served through its registered agent, Platinum Team Management Inc., 801 S. Hwy. 78, Suite 307, Wylie, Texas 75098. Issuance of citation is requested at this time.

43.     Defendant Platinum Health Systems LLC is a Texas Limited Liability Company which may be served through its registered agent, Incorp Services, Inc., 815 Brazos St., Ste. 500, Austin, Texas 78701. Issuance of citation is requested at this time.

44.     Defendant Platinum Senior Life LLC is a Texas limited liability company which may be served through its registered agent, Platinum Team Management Inc at 801 S HWY 78 Suite 307 Wylie, Texas 75098. Issuance of citation is requested at this time.

45.     Defendant Milagro Mio, PLLC is a Texas Professional Limited Liability Company which may be served through its registered agent, Mark Urish, 2175 E. Stone Rd., Wylie, Texas 75098. Issuance of citation is requested at this time.

46.     Defendant Milagro Mio 2, PLLC is a Texas Professional Limited Liability Company which may be served through its registered agent, Platinum Neighbors, Inc., 801 S. Hwy. 78, Suite 307, Wylie, Texas 75098. Issuance of citation is requested at this time.

47.     Defendant Samuel D. Evang, LLC is a Texas limited liability company which may be served through its registered agent, Evang D Samuel at 801 B.S. Highway 78 Wylie, Texas 75098. Issuance of citation is requested at this time.

48.     Defendant Neighbors Visiting Doctors, LLC is a Texas Limited Liability Company which may be served through its registered agent, Brandon Deiters, 709 Business Way, Wylie, Texas 75098. Issuance of citation is requested at this time.

49.     Defendant Rosemary & Root LLC is a Texas Limited Liability Company which may be served through its registered agent, Brandon Deiters, 801 S. Hwy. 78, Suite 307, Wylie, Texas 75098. Issuance of citation is requested at this time.

50.     Defendant Saddle Star Land Development, LLC is a Texas Limited Liability Company which may be served through its registered agent, Mark J. Calabria, 201 W. Mulberry Street, Kaufman, Texas 75142. Issuance of citation is requested at this time.

51.     Defendant Mayberry Gardens, Inc. is a Texas Corporation which may be served through its registered agent, Scott Mayberry, 2513 Golden Oaks, Garland, Texas 75042. Issuance of citation is requested at this time.

52.     Defendant Correctlife Missouri Holdings, LLC is a Missouri Limited Liability Company which may be served through its registered agent, CT Corporation System, 120 S Central Ave., Clayton, MO 63105. Issuance of citation is requested at this time.

## IV.
## JURISDICTION AND VENUE

53.     The Court has jurisdiction over Defendants because the amount in controversy falls within jurisdiction limits of this Court, because Defendants regularly conduct business in the State of Texas, and because the basis of this suit originates from Defendants continuous and purposeful

contacts with the State of Texas.

54.     Venue is proper in Dallas County, Texas under Chapter 15 of the Texas Civil Practice

and Remedies Code (the "CPRC") because, among other reasons:

- All or a substantial portion of the events or omissions giving rise to Plaintiffs' causes of action occurred in Dallas County, Texas;

- A substantial amount of the disputed property in this case is located in Dallas County, Texas;

- Dallas County is the county of Plaintiff Wazu's principal place of business;

- Dallas County is the county of Plaintiff MT's principal place of business; and,

- a suit in which the Plaintiffs have established proper venue against a defendant, the court also has venue of all of the defendants in all claims or actions arising out of the same transaction, occurrence, or series of transactions or occurrences.

## V.
## FACTS

**A.     Summary of the Dispute.**

55.     This is a case about fraud, and an ongoing attempt to avoid liability through the

commingling and diversion of assets through over a dozen entities.

56.     In early 2022, Plaintiffs were approached by Ryan Cole ("Cole"), a purported real

estate developer, who was seeking investments for several projects in Dallas County, Collin County,

Missouri, Arkansas, Louisiana, Costa Rica, and various other locations.

57.     In part, Cole sought investment directly into Defendant PMM, a holding company,

which he represented was for the purpose of completing several of Cole's projects. In other

instances, Cole sought to raise money via debt instruments for the completion of specific

development projects – or, that was the story at least.

58.     To date, Cole has divested – through straw purchases, surrendering of deeds to

manufactured creditors, and diversion of funds overseas – nearly all, if not all, of Cole's dozens of entities' assets, without paying investors back a dime.

**B.      Defendants' False Ownership and Value Claims**

59.      Leading up to and throughout the times in which Plaintiff and Cole were discussing Plaintiffs' investment with Cole and his companies, Cole represented that PMM owned approximately 20 acres located at 801 S. Hwy 78, Wylie, Texas, worth approximately $15 million. Plaintiffs later discovered that this real property was not owned by Cole or PMM but is actually owned by Defendant Golden Harbor. Defendant Golden Harbor is owned and/or controlled by Cole's co-conspirator, Monteiro. Recently, Cole and his cabal orchestrated the disposition of this asset to another third party, with no notice to investors, and without repaying any of the proceeds to investors.

60.      Cole also represented that PMM owned real property located at 3272 N. Garland Ave. (Mayberry Gardens), Garland, Texas. Plaintiffs later discovered that this real property was not owned by Cole or PMM but is actually owned by Defendant Mayberry Gardens, Inc.

61.      Further, Cole represented that PMM owned the Callaway Community Hospital & adjoining property totaling 15 acres. Plaintiff would later learn that the Callaway County appraisal district, the property is actually owned by Defendant Noble Health Real Estate LLC (the hospital), Defendant Correctlife Missouri Holdings (adjoining vacant land), and Defendant FMC Clinic LLC (nearby bldg.).

**C.      Plaintiff MT Medical's Purchase of PMM Stock.**

62.      In reliance upon Defendants' misrepresentations, MT purchased Nine Hundred Seventy-Five (975) Class P stock in MT for Nine Hundred Seventy-Five Thousand Dollars

($975,000) (the "Invested Capital") pursuant to the Redeemable Stock Purchase Agreement, dated June 30, 2022 ("Agreement") and executed by Ryan Cole, Chief Executive Officer of the Company ("Cole").

63.    A Class P stockholder in PMM is afforded the benefit of a non-compounding, cumulative preferred return ("Preferred Return") on a Class P stockholder's invested capital. Further, in accordance with the terms of the Agreement, MT would have its stock redeemed 367 days from date of the Agreement. Further, Cole pledged Four Hundred Eighty Thousand shares of common stock of PMM as security for the performance of the promises in the Agreement.

64.    To date, MT has yet to receive a single payment of the accrued Preferred Return and MT received disturbing news that the subsidiaries and/or affiliates of PMM have initiated asset transfers, liquidations and/or filing of bankruptcy thus placing PMM in serious. financial risk. As a result, MT has reason to believe that PMM through Cole, its CEO, materially misrepresented and/or omitted relevant PMM information to MT as an inducement to MT to invest in PMM.

65.    On February 2, 2023, MT's counsel sent a letter to PMM and Cole demanding payment. The February 2, 2023 letter also demanded an inspection of all books and records pertaining to the financial statements of PMM, including but not limit to balance sheet, statement of assets and liabilities, and profit and loss statements.

66.    PMM wholly failed to respond to the February 2, 2023 letter. PMM failed to pay MT as promised, and also failed to permit an inspection of PMM's books and records.

**VI.**
**COUNT 1 – BREACH OF FIDUCIARY DUTY**

67.    Plaintiffs fully incorporate and re-allege the foregoing paragraphs 55-66.

68.    For there to be a breach of a fiduciary duty, the following must be present: (a) the

plaintiff and the defendant had a fiduciary relationship; (b) the defendant breached its fiduciary duty to the plaintiff; and (c) the defendant's breach (i) proximately causes injury to the plaintiff, or (ii) resulted in a benefit to the defendant.

69.     Fiduciaries owe the following duties:  (a) the duty of loyalty and utmost good faith; (b) the duty of candor; (c) the duty to refrain from self-dealing, which extends to dealings with a fiduciary's spouse, agents, employees, and other persons whose interests are closely identified with those of the fiduciary; (d) the duty to act with integrity of the strictest kind; (e) the duty of fair and honest dealing; and (f) the duty of full disclosure.

70.     Members of a limited liability company owe specific fiduciary duties to their limited liability company, including:  (a) the duty not to usurp corporate opportunities for personal gain; (b) the duty of the utmost good faith, fairness and honesty in relations with the limited liability company; (c) the duty of full disclosure of all matters affecting the limited liability company (including any personal interest the member has in the subject matter of a contract the member negotiates with the limited liability company); (d) the duty of loyalty; (e) the duty to use uncorrupted business judgment for the sole benefit of the limited liability company; (f) the duty of care; (g) the duty to place the limited liability company's interests above the member's own interests; and (h) the duty of obedience.

71.     Plaintiff had both a formal and informal fiduciary relationship with Defendants from Plaintiff's prior and ongoing business relationships with both Defendants. Defendants went out of their way to establish a higher level of trust and legitimacy as to their knowledge about Cole and his entities in order to solicit Plaintiff's trust that Cole and his entities were who they purported to be and owned what they purported to own. Due to this elevated access to information that Defendants

represented that they had as to Cole, his entities, and his businesses, Plaintiff reasonably relied on such information, and had no reason to doubt its legitimacy.

72. Defendants breached Defendants' fiduciary duty to Plaintiff by not only withholding the true ownership information about Cole and Cole's entities' holdings, but by intentionally soliciting investment into Cole's projects on his and his entities' behalf to further build Defendants business relationships with Cole and his entities.

73. Defendants' breaches of fiduciary duty caused Plaintiff to invest in Cole's projects on Defendants' insistence, which resulted in Plaintiff's losing nearly $3 million to date in projects that either didn't exist, or were not owned by Cole or his entities as Cole and Defendants had expressed to Plaintiff to entice Plaintiff's three investments.

74. Defendants breach of fiduciary duty benefited Defendants by bolstering their business relationships with Cole and his entities, and to continue to be a preferred Title agent/agency source for Cole in future projects.

75. Plaintiff's injury resulted from Defendants malice, fraud, or gross negligence, which entitles Plaintiff to exemplary damages pursuant to Tex. Civ. Prac. & Rem. Code Section 41.008.

## VII.
## COUNT 2 – FRAUD

76. Plaintiffs fully incorporate and re-allege the foregoing paragraphs 55-75.

77. Defendants made several material misrepresentations as to Cole's ownership of properties – which Cole did not own – as to Cole's entities' ownership of properties – which PMM and/or the entity Defendants did not own – and as to the intended use of proceeds for Plaintiffs investments.

78. All of Defendants' representations as to Cole, Cole's entities, and the legitimacy of

Cole's solicited investments turned out to be false. At the time that Defendants made such representations, Defendants either knew such representations were false, or were reckless in making such representations without seeking knowledge of its truth – knowing that Plaintiffs would rely on Defendants' representations. Defendants made such misrepresentations knowing that Plaintiff would rely on them and ultimately invest with Cole and Cole's entities.

79.     Due to Defendants' representations as to Cole, Cole's entities, and the purported legitimacy of Cole's investment proposals to Plaintiff, Plaintiff invested and lost nearly $3 million with Cole and Cole's entities.

80.     Plaintiff's injury resulted from Defendants malice, fraud, or gross negligence, which entitles Plaintiff to exemplary damages pursuant to Tex. Civ. Prac. & Rem. Code Section 41.008.

### VIII.
### COUNT 3 – NEGLIGENT MISREPRESENTATION

81.     Plaintiffs fully incorporate and re-allege the foregoing paragraphs 55-80.

82.     In the alternative, Defendants' actions, described herein, constitute negligent misrepresentation and/or gross negligent misrepresentation.

### IX.
### COUNT 4 – BREACH OF CONTRACT

83.     Plaintiffs fully incorporate and re-allege the foregoing paragraphs 55-83.

84.     For a breach of contract cause of action to exist, the following elements must be present:

   a.   There is a valid, enforceable contract;

   b.   The plaintiff is a proper party to bring suit for the breach of the contract;

   c.   The plaintiff performed, tendered performance of, or was excused from performing its contractual obligations.

DocuSign Envelope ID: 4428C8D9-56EF-42FA-B349-EE4E3D6BE5D6

  d. The defendant breached the contract; and,

  e. The defendant's breach causes the plaintiff's injury.

85. Every one of these breach of contract elements are present here.

86. Ther is a valid and enforceable contract in the form of Redeemable Stock Purchase Agreement. Plaintiffs are the proper party to bring suit for the breach of that contract. Plaintiff performed, tendered performance of, or was excused from performing its obligation under the Stock Purchase Agreement. Defendants breached the Stock Purchase Agreement by among other things, failing to distribute the Preferred Return on Plaintiffs' Class P stockholder's invested capital within 367 days from the date of the Stock Purchase Agreement.

87. Plaintiffs seek all actual, consequential, special, and incidental damages that resulted from the breaches of Cole and PMM's Subscription, Assignment, and Other Agreements with Plaintiffs, detailed herein.

## X.
## COUNT 5 – TORTIOUS INTERFERENCE WITH EXISTING CONTRACT

88. Plaintiffs fully incorporate and re-allege the foregoing paragraphs 55-88.

89. The elements for a cause of action for the tortious interference with an existing contract are the following:

  a. The plaintiff had a valid contract;

  b. The defendant willfully and intentionally interfered with the contract;

  c. The interference proximately caused the plaintiff's injury; and,

  d. The plaintiff incurred actual damages or loss.

90. All of these elements are present here.

91.     Plaintiffs, Cole, and PMM have valid contracts in the form of the Subscription Agreements, Assignments, and Shareholder Consent Agreements. The remaining Defendants willfully and intentionally interfered with such contracts by knowingly and willfully causing, conspiring to cause, or facilitating Cole and PMM to violate such agreements with Plaintiffs, as set forth above by, among other things, diverting funds from their stated use and purpose, by engaging in fraudulent transactions to deprive Plaintiffs of the property their investments were known to be secured by, and by allowing Cole, PMM, and others to openly represent that they held ownership of properties that belonged to Defendants or that Defendants had already encumbered in order to deprive Plaintiffs of the benefits of their investments.  These willful and intentional interferences by Defendants proximately caused injuries to Plaintiffs, and Plaintiffs incurred actual damages or loss as a direct result.

92.     Plaintiffs seek all actual, consequential, special, and incidental damages that resulted from Defendants' willful and intentional interferences, described herein.

## XI.
## COUNT 6 – CONSPIRACY

93.     Plaintiffs fully incorporate and re-allege the foregoing paragraphs 55-93.

94.     The elements of conspiracy are the following:

    a.   The defendant was a member of a combination of two or more persons;

    b.   The object of the combination was to accomplish: (i) an unlawful purpose or (ii) a lawful purpose by unlawful means;

    c.   The members had a meeting of the minds on the object or course of action;

    d.   One of the members committed an unlawful, overt action to further the object or course of action; and,

    e.   The plaintiff suffered an injury as a proximate result of the wrongful act.

95.     Not only are all of these elements present in this case, but Cole himself has in essence confessed as to the commingling and coordination of the Defendants named herein.

96.     Plaintiffs seek all actual, consequential, special, and incidental damages that resulted from Defendants' willful and intentional interferences, described herein.

## XII.
## ADDITIONAL REMEDIES REQUESTED

### A.     CONSTRUCTIVE TRUST

97.     Plaintiffs fully incorporate and re-allege the foregoing paragraphs 1-96.

98.     A constructive trust is an equitable remedy created by the courts to prevent unjust enrichment.  To obtain a constructive trust, the proponent must prove the:  (a) breach of a special trust, fiduciary relationship, or actual fraud; (b) unjust enrichment of the wrongdoer; and (c) tracing to an identifiable res.  All of these constructive trust elements are present here.

99.     There has been a breach of a fiduciary relationship that Defendants Cole and Monteiro owed Plaintiffs from Plaintiffs' prior and ongoing business relationships them and a breach of the Stock Purchase Agreement.   In doing so, Cole, Monteiro and their entities enriched themselves by paying to themselves money that should have paid to Plaintiffs, which is the identifiable res.

100.    Plaintiffs had both a formal and informal fiduciary relationship with Defendants Cole and Monteiro from Plaintiff's prior and ongoing business relationships with both Defendants. Defendants went out of their way to establish a higher level of trust and legitimacy as to their knowledge about Cole and his entities in order to solicit Plaintiffs' trust that Cole and his entities were who they purported to be and owned what they purported to own. Due to this elevated access to

information that Defendants represented that they had as to Cole, his entities, and his businesses, Plaintiffs reasonably relied on such information, and had no reason to doubt its legitimacy.

**B.     ACCOUNTING**

101.    Plaintiffs fully incorporate and re-allege the foregoing paragraphs 55-100.

102.    An equitable accounting developed in the chancery courts of England as a restitutionary remedy to avoid unjust enrichment by reaching money owed by a fiduciary or other wrongdoer, including profits that should in equity and good conscience belong to the plaintiff. An equitable accounting, as a restitutionary remedy, is based on unjust enrichment. As with a constructive trust, the profit sought need not have been made at the plaintiff's expense. A plaintiff seeking an equitable accounting rather than a constructive trust need not identify a particular asset or fund of money in the defendant's possession to which he is entitled. An accounting, as an equitable remedy for breach of fiduciary duties forces, a defendant to disgorge gains improperly obtained by breach of fiduciary duty and imposes on the defendant the obligation of proving appropriate deductions to determine the profit. An accounting can also be used to obtain information in aid of obtaining such profits.

103.    Plaintiffs are entitled to an accounting from Defendants. This equitable remedy will avoid the unjust enrichment of Defendants by reaching money that they wrongfully took for themselves by unlawfully diverting investor funds, as violations and contravention of corporate bylaws and the fiduciary duties that Defendants owed to Plaintiffs.

### XIII.
### EXEMPLARY DAMAGES

104.    The acts of Defendants, as complained of herein, were committed knowingly, intentionally, with actual awareness, fraudulently, with actual malice, or gross negligence. In order

to punish them for such unconscionable overreaching and to deter such actions and/or omissions in the future, the Plaintiffs seek recovery from Defendants of exemplary damages as provided by Chapter 41 of the CPRC.

## XIV.
## LEGAL FEES, EXPENSES AND COSTS OF COURT

137.    The Plaintiff is entitled to be paid from the Defendants its legal fees, expenses and costs of court for the trial before this Court and any appeal to the Court of Appeals and the Supreme Court of Texas under the Operating Agreement, CPRC § 38.001(8), and Rule 131.

## XV.
## CONDITIONS PRECEDENT

138.    All conditions precedent to the Plaintiffs' right to recovery have been performed, have occurred, and/or have been waived.

## XVI.
## ALTERNATIVE ALLEGATIONS

139.    Under Rules 47 and 48 and the rules of pleadings, allegations in this Petition are made in the alternative.

## XVII.
## NO WAIVER

140.    By filing this lawsuit, the Plaintiffs do not waive or release any rights, claims, causes of action, or defenses or make any election of remedies that he has, but expressly reserves such rights, claims, causes of action and defenses.

## XVIII.
## EMERGENCY APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTIVE RELIEF AGAINST DEFENDANTS COLE AND MONTEIRO

141.    Plaintiffs fully incorporate and reallege the foregoing paragraphs 1-141.

## A. INTRODUCTION

142. Plaintiffs request a temporary restraining order against all Defendants. The purpose of a temporary restraining order (a "TRO") is to provide emergency relief and to preserve the status quo pending a trial on the merits. The status quo is often defined as the last actual peaceable, non-contested status that preceded that controversy. Whether to grant a TRO is within the trial court's sound discretion. A TRO may be issued without notice and a hearing when the person seeking relief is threatened with immediate and irreparable injury. A TRO holds matters in abeyance until a date specified.

143. A TRO is an extraordinary remedy and will not issue as a matter of right. The standards in Texas for obtaining a TRO and permanent injunction are well-established. Here, Plaintiffs are entitled to injunctive relief by virtue of: (a) CPRC § 65.001 et seq., and (b) the principles of common law and equity.

## B. PLAINTIFFS ARE ENTITLED TO INJUNCTIVE RELIEF UNDER CPRC § 65.001 ET SEQ. AND THE PRINCIPLES OF COMMON LAW AND EQUITY

144. Under CPRC § 65.011, a writ of injunction may be granted if:

a. the applicant is entitled to the relief demanded and all or part of the relief requires the restraint of some act prejudicial to the applicant;

b. a party performs or is about to perform or is procuring or allowing the performance of an act relating to the subject of pending litigation, in violation of the rights of the applicant, and the act would tend to render the judgment in that litigation ineffectual;

c. the applicant is entitled to a writ of injunction under the principles of equity and the statutes relating to injunctions;

# # #

d. irreparable injury to real or personal property is threatened, irrespective of any

DocuSign Envelope ID: 4428C8D9-56EF-42FA-B349-EE4E3D6BE5D6

remedy at law.

145.     All of these elements are present here.  Plaintiffs are entitled to the relief demanded and all or part of the relief requested requires the restraint of some act by Cole and Monteiro that are prejudicial to Plaintiffs including, among other things:  (a) the fraudulent transfer of assets to which Plaintiffs invested in to the detriment of Plaintiffs, (b) the commingling and diversion of investor funds for their personal gain, (c) the creation of fictious transaction and security interest related to properties which Plaintiffs invested in, and (d) converting Plaintiffs' property. Plaintiffs are entitled to a writ of injunction under the principles of equity and the statutes relating to injunctions.  And irreparable injury to personal property is threatened irrespective of any remedy at law.

146.     Under the principles of common law and equity, a movant is entitled to injunctive relief when he has demonstrated the following four grounds: (1) the existence of wrongful acts; (2) the existence of imminent harm; (3) the existence of irreparable injury; and, (4) the absence of an adequate remedy at law.

## C.     DEFENDANTS ARE COMMITTING WRONGFUL ACTS

147.     A probable right of recovery is shown by alleging a cause of action and presenting evidence tending to sustain it.   At a hearing on an application for a TRO, the sole question before the court is the right of the party seeking the injunction to the preservation of the status quo of the suit's subject matter pending a final trial on the merits.

148.     To show the existence of wrongful acts, the applicant must (a) plead a cause of action, (b) show a probable right to recover on that cause of action, and (c) show a probable injury in the interim.   A probable right of success on the merits is shown by alleging a cause of action and presenting evidence that tends to sustain this cause of action.   Probable injury includes elements of

interim harm, irreparable injury, and no adequate legal remedy for damages.

149.     It is not necessary for the applicant to establish that he or she will finally prevail on the merits.   The applicant has the burden of proof to make a prima facie case.   A showing of a probable right to recovery and probable injury makes out the necessary prima facie case.

150.     There is no question that Defendants Cole and Monteiro, individually and in concert with themselves and others committed wrongful acts which are described in detail above.  These wrongful acts include, without limitation: (a) the fraudulent transfer of assets to which Plaintiffs invested in to the detriment of Plaintiffs, (b) the commingling and diversion of investor funds for their personal gain, (c) the creation of fictious transaction and security interest related to properties which Plaintiffs invested in, and (d) converting Plaintiffs' property. Plaintiffs are entitled to a writ of injunction under the principles of equity and the statutes relating to injunctions. In this Petition, Plaintiffs have pled causes of action against Defendants and there exists a probable right to recover on those causes of action.

151.     A prima facie case has been made by Plaintiffs in that Plaintiffs have shown a probable right to recovery and a probable injury.  Therefore, Plaintiff has met the first prong for a TRO.

**D.     PLAINTIFFS WILL SUFFER IMMINENT HARM AND IRREPARABLE INJURY UNLESS  THE REQUESTED INJUNCTIVE RELIEF IS GRANTED**

152.     In order to obtain injunctive relief, a party must plead and prove, among other things that it will suffer irreparable harm if the status quo is not preserved pending trial pending a trial on the merits.  An injury is considered to be irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard. Irreparable harm for the purposes of injunctive relief may include non-compensable injuries such as

a company's loss of goodwill, damage to reputation, loss of business opportunities, lost market share and sales, loss of clientele, marketing techniques, office stability and the like. Speculative injury is insufficient; there must be more than an unfounded fear on the part of the applicant.

153. Goodwill is defined as:

> The advantage or benefits which is acquired by an establishment beyond the mere value of the capital stock, funds or capital employed therein, in consequence of the general public patronage and encouragement which it receives from constant and habitual customers on account of its local position, or common celebrity, or reputation for skill, or influence, or punctuality, or from other accidental circumstances or necessities, or even from ancient partialities or prejudices.

154. A showing of economic loss is usually not enough to establish irreparable harm because damages may be recoverable at the end of the litigation. An exception exists where the potential economic loss is so great as to threaten the existence of the applicant's business. This is because a judgment for damages acquired years after the applicant's business has been destroyed would not be a meaningful remedy.

155. The wrongful acts being committed by Defendants Cole and Monteiro are most definitely causing imminent and irreparable harm. By illegally siphoning funds and assets to which Plaintiffs invested and are entitled to returns from, and continuing to do so to this day, Defendants have depleted and will soon have completely disposed of Plaintiffs' funds and the fruit of Plaintiffs' investments, and have seemingly begun investing such funds overseas – through unrelated entities. Defendants must be stopped, before Plaintiffs' ability to recover damages at any point in the future and to stop the destruction of entities invested in.

## E.   DEFENDANTS WILL CONTINUE TO HARM PLAINTIFFS

156. An applicant for prohibitory injunctive relief must show that the respondent intends to

---

engage in the conduct that is sought to be enjoined.   Here, on the facts present, and based on the totality of the circumstances and a totality of the evidence, it is easy to conclude that Defendants intend to continue to harm Plaintiffs.

157.    There is no end in sight to the imminent and irreparable injury and harm that Defendants intend to wreak on Plaintiffs.  This misconduct will continue unabated to harm Plaintiffs until this Court does something about it and puts an end to it.

## F.    THE BALANCE OF HARMS TIPS IN FAVOR OF PLAINTIFFS

158.    Defendants will not be harmed if the requested injunctive relief is entered. Defendants have not been entitled to divert assets, engage in straw purchases and transfers to Plaintiffs' detriment, and to wholly ignore Plaintiffs' interests related to Plaintiffs' investments. Regardless, Defendants have taken Plaintiffs' funds, and wrongfully diverted assets away from Defendants to themselves and their own controlled entities. Restraining further disposition and transfers without court approval will not harm Defendants, and is necessary to preserve the status quo.

159.    Injunctive relief to that effect, whether temporary or permanent, is very narrowly tailored.  Accordingly, there will be no harm to Defendants if this Court grants the Plaintiffs' requested relief.  On the other hand, if the requested injunctive relief herein is denied, there will not only be actual harm, but continuing actual harm to the Plaintiffs.  That harm will be significant and, most likely, insurmountable as Defendants continue to inflict unhealable wounds on Plaintiffs. Defendants' wrongful misconduct has harmed and will continue to harm Plaintiffs to their detriment.

## G.    THIS COURT SHOULD ORDER DEFENDANTS COLE AND MONTEIRO TO RETURN PLAINTIFFS TO THEIR PREVIOUS POSITION PENDING A FINAL RESOLUTION

160.    As discussed above, the purpose of a TRO is to preserve the status quo – the last

peaceable, non-contested status the preceded the controversy. The issuance of the injunctive relief requested herein will do just that. Furthermore, Plaintiffs are certain to suffer imminent and irreparable injury if that injunctive relief is not granted. If Defendants' misconduct is allowed to proceed, Plaintiffs, directly and indirectly will be irreparably harmed beyond repair. An award of damages at some later undefined date will not be enough to correct the violative behavior currently afoot.

161.    Therefore, Plaintiffs request that this Court enter an Order restraining Defendants, directly and indirectly, and any of their Members, Managers, agents, servants, employees, assigns, attorneys, accountants, professionals, beneficiaries and/or anyone acting in concert with them from, inter alia, performing the wrongdoings detailed above.

162.    There is no adequate remedy at law that can accomplish these results and stop the kind of violative wrongful misconduct and behavior that Defendants are currently committing against Plaintiffs.

163.    Plaintiffs seek injunctive relief, including a TRO, temporary injunction and a permanent injunction from this Court under CPRC Chapter 65, common law principles of equity and Rule 680.

164.    Plaintiffs are willing to post a bond in the amount this Court deems necessary.

## PRAYER

**WHEREFORE PREMISES CONSIDERED**, Plaintiffs WaZu Capital Partners, Inc. and MT Medical Properties, LLC pray that the Defendants be cited to appear and answer, as required by law, that this Court set this matter for trial and, that on final trial, and the Plaintiffs have the following relief:

1) Judgment against the Defendants for actual, consequential, special, incidental, economic, and non-economic damages in an amount within the jurisdictional limits of this Court;

2) Judgment against the Defendants for exemplary damages;

3) The imposition of a constructive trust as requested herein;

4) An accounting, as requested herein;

5) A Temporary Restraining Order;

6) A Temporary Injunction;

7) A Permanent Injunction;

8) Legal fees and expenses;

9) Prejudgment interest at the highest rate allowable at law;

10) Post judgment interest at the highest rate allowable at law;

11) Costs of suit; and

12) Such other and further relief, special or general, at law or in equity, as this Court may deem just and proper.

Respectfully submitted,

**FRIEDMAN & FEIGER, L.L.P.**

By: */s/ Kyle A. Coker*

    **Kyle A. Coker**
    State Bar No. 24115353
    kyle@fflawoffice.com
Dominion Plaza West
17304 Preston Road, Suite 300
Dallas, Texas 75252
(972) 788-1400 (Telephone)
(972) 788-2667 (Telecopier)

**ATTORNEY FOR PLAINTIFF**

## VERIFICATION

**STATE OF TEXAS**                §
                                  §
**COUNTY OF DALLAS**              §

      **BEFORE ME**, the undersigned Notary Public, on this day personally appeared Mohammad Hussain, who by me being duly sworn did state upon his oath that he has personal knowledge of the statement contained herein; that he has read the above and foregoing *Plaintiff's Original Petition* and to the best of his knowledge same are true and correct.



**Mohammad Hussain**

      **SUBSCRIBED AND SWORN TO BEFORE ME** on the 1st day of December, 2023, to certify which witness my hand and official seal of office.



NOTARY PUBLIC

