Russell Devenport
Texas Bar No. 24007109
McDonald Sanders, P.C.
777 Main Street, Suite 2700
Fort Worth, Texas 76102
(817) 336-8651
(817) 334-0271 fax

ATTORNEYS FOR CREDITOR
NUETERRA CAPITAL, LLC

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| In re: § | | BANKRUPTCY NO. |
| § | | 24-40647 |
| RYAN COLE and SARAH COLE, § | | |
| Debtors. § | | CHAPTER 7 |

**NUETERRA CAPITAL'S REPLY TO RESPONSE TO MOTION FOR EXTENSION OF DEADLINE TO OBJECT TO DISCHARGE OR <u>CHALLENGE DISCHARGEABILITY</u>**

TO THE HONORABLE BRENDA T. RHOADES, U.S. BANKRUPTCY JUDGE:

COMES NOW, Nueterra Capital LLC ("<u>Nueterra</u>"), an interested party and scheduled creditor in the above-referenced bankruptcy case, and files this "<u>Reply</u>" to Response to Nueterra's Motion for Extension of Deadline to Object to Discharge or Challenge Dischargeability (the "<u>Motion</u>") [Dkt. 50] and would respectfully show the Court as follows:

1. The debt at issue to Nuettera arises from the purchase of Noble Health Corp. and Noble Health Services Inc. ("<u>Noble</u>") by Platinum Medical Management Inc., f/k/a Platinum Neighbors Inc. ("<u>PNI</u>") in a stock sale. PNI is one of Debtor's many companies and, Nuettera believes, an alter ego of Debtor.

2. Prior to the sale to PNI, Nuettera partially guaranteed a loan from Central Bank of the Midwest ("<u>Central Bank</u>") to Noble. As part of the stock sale, PNI assumed all business debt

of Noble and promised to pay such debt in full or refinance such debt with a release of Nuettera from its guaranty obligations. In deciding to approve the sale, Nuettera relied on representations made by Debtor. Attached as Exhibit A is the Platinum Team Management Consolidated Financial Statements provided to Nuettera for consideration in approving PNI's purchase of Noble. The financial statements include a personal financial statement for Debtor showing over $3 million in cash and cash equivalents and over $193 million in investments. This is in addition to the financial representations for PNI, which are inconsistent with Debtor's bleak bankruptcy schedules.

3. PNI did not pay off the debt, refinance or secure a release of Nuettera's guaranty. Central Bank sued Nuettera on the guaranty obligations and Nuettera sued PNI with a resulting judgment in Central Bank's favor against Nuettera and a judgment in Nuettera's favor against PNI (the "PNI Judgment").

4. Nuettera has been active in seeking collection on the PNI Judgment, including domesticating the PNI Judgment in Texas. However, Nuettera has been unable to secure the post-judgment discovery needed.

5. Most recently, Nuettera was able to take the deposition of Jonathan Countryman, who was hired by Debtor to open a hospital in Missouri, on May 31, 2024 and Nueterra has been in contact with Melissa Upshaw to schedule her deposition. In fact, Ms. Upshaw's deposition had been set for May 30, 2023, but the deposition did not take place because of storms and flooding on that date.

6. Nuettera seeks to take the deposition of Ms. Upshaw and the examination of Mr. Cole before making the decision to file a new adversary proceeding against Mr. Cole. Ms. Upshaw is listed as a member or otherwise connected to several entities listed by Debtor and Mr.

Countryman noted her potential knowledge regarding Debtor's businesses. Specifically, Mr. Countryman made reference to Ms. Upshaw many times in his deposition:

>Page 14:14-21
>
>14 Melissa Upshaw was the person I spoke with
>15 most commonly, she's the one that recruited me. She did
>16 my offer letter. She introduced me to the company and
>17 so forth. So I spoke with her a lot, and ==she was --==
>18 ==she'd worked with him for years,== I think they had done a
>19 couple of -- I think he had bought her husband's
>20 business or something. I really don't know the
>21 specifics. But she was in the inner circle.
>
>Page 23:14-23
>
>14 Q. And what did Platinum Team Management
>15 Incorporated do?
>16 A. I don't know. I think that Melissa Upshaw was
>17 the president of that company, I believe, but I know
>18 that they changed her title several times. And quite
>19 honestly, you know. ==Melissa will be able to tell you==
>20 ==all this information,== Mathew, but I don't know what
>21 Platinum Team Management did. I really -- like I told
>22 you a little bit ago, half of these things I can't
>23 imagine ever actually did anything.
>
>Page 26:2-10
>
>2 Q. Okay. So how about this, Platinum Neighbors or
>3 ==Platinum Medical Management, who were -- who were==
>4 ==running that operation?==
>5 ==A. Ryan and Brandon and Melissa Upshaw, I presume.==
>6 I -- I don't -- I don't know -- I don't know exactly
>7 what that company was or did. I'm assuming all this was
>8 created before I started with grandiose plans of having
>9 all these different companies, so I really don't know
>10 what any of them did.
>
>Page 29:7-16
>
>7 Q. And so, I assume Melissa would have had a
>8 position with that Platinum Therapy entity; is that
>9 your -- that your understanding?
>10 A. I -- I don't know if she did or not. ==Melissa did==

11 everything from marketing to business development to
12 president of Platinum Neighbors or something at one
13 point. I mean, it seemed like they were always changing
14 her title based on whatever dynamics were going on in
15 the office. I really don't know what all she was
16 involved.

Page 42:10-18

10 Q. Do you know who owns that facility?
11 A. I had heard before that Ryan owned it, but I had
12 heard him say he owned multiple things that he did not.
13 He had an option to own things that he may or may not
14 have exercised the option. As it relates to this, I
15 don't know. Melissa Upshaw would be able to tell you
16 that, she was very involved in this project, I think
17 over -- oversaw the facility, if I'm not -- well, I know
18 she oversaw the facility, so...

Page 43:2-19

2 Q. It goes on to say that Paramount will also be
3 purchasing a medical center in Wylie for 12.7 million,
4 that will carry a note 9 million. Did that purchase
5 occur?
6 A. I have no idea.
7 Q. Do you know who would know?
8 A. Melissa, Ryan, Brandon, Molly.
9 Q. It also goes on to say that Platinum Neighbors
10 owns a 30 percent interest of Crossroads Pharmacy, which
11 currently has one location and will be expanding into
12 three to five in the next 12 months. I guess first of
13 all, where is Crossroads Pharmacy or what is Crossroads
14 Pharmacy?
15 A. I have no idea, Mathew.
16 Q. And your -- your position would be that Melissa
17 and the other folks you named would be the best people
18 to figure that out?
19 A. Absolutely.

Page 58:14-24

14 . . . and I
15 think Melissa was involved in everything, I mean, she
16 wasn't just on the healthcare side. I think she was --
17 I mean, she was very much -- Ryan leaned on her very,

> 18 very much because she was always in the office and was a
> 19 hard worker and very dedicated to try to do the right
> 20 thing.
> 21 So I assume she would know about -- I mean,
> 22 she was -- I know she was involved in a couple of these,
> 23 'cause the only reason I know some of these names is
> 24 because Melissa would have told me about it.

> Page 74:4-7

> 4 You know, Molly and Melissa are going to be
> 5 your two people that know everything. Obviously
> 6 Brandon, but I trust Brandon as far as I can throw
> 7 Russell.

*See* the Deposition of Jonathan Countryman, attached as Exhibit B.

7. Despite the information provided in the financial documents indicating that Mr. Cole had assets worth approximately $196 million, Debtors claim in their bankruptcy petition assets between $1 million and $10 million and debts between $50 million and $100 million.

8. Nuettera does not take filing such an adversary lightly and seeks a reasonable time to take the depositions before moving forward.

9. Nueterra has worked diligently to protect its rights and cause exists to extend the deadline as requested.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Creditor Nueterra Capital LLC requests that this Court enter an order granting Nueterra a sixty (60) day extension of time to file an objection to discharge or a complaint challenging dischargeability and such other and further relief, at law or in equity, to which it may be justly entitled.

Respectfully submitted,

  */s/ Russell A. Devenport*
Russell A. Devenport
State Bar No. 24007109
rad@mcdonaldlaw.com
H. Dustin Fillmore IV
State Bar No. 24105858
hdf@mcdonaldlaw.com

**McDONALD SANDERS,**
A Professional Corporation

777 Main Street, Suite 2700
Fort Worth, Texas 76102
(817) 336-8651 Telephone
(817) 334-0271 Facsimile

**ATTORNEYS FOR CREDITOR
NUETERRA CAPITAL, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served upon all counsel of record via the Court's ECF electronic filing system on July 8, 2024.

  */s/ Russell A. Devenport*
Russell A. Devenport