ASET PURCHASE AND STOCK TRANSFER AGREEMENT

THIS ASSET PURCHASE AGREEMENT (the "*APA*") is made as of this 28th day of December 2022 (the "*Effective Date*"), BETWEEN:

SAINT PIO OF PIETRELCINA LLC of 15758 SE HWY 224, Unit 116, Damascus, OR 97089, an Oregon Limited Liability Company ("*SPOP*")

- AND -

```
┌─────────────┐
│  EXHIBIT    │
│     14      │
└─────────────┘
```

PASTURE MEDICAL LLC of 30 N Gould St, STE 4000
Sheridan, WY 82801, a Wyoming Limited Liability Company ("*Pasture*")

- AND -

NOBLE HEALTH CORP. and NOBLE HEALTH SERVICES, INC. (collectively referred to as the "*Company*" or "*Companies*") registered in the State of Missouri

Reference is made to the General Agreement made as of December 7, 2022 (the "*Platinum Transaction Date*") between Platinum Medical Management, Inc. ("*Platinum*") and SPOP, a copy of which is attached as **Exhibit A** (the "*General Agreement*"). A capitalized term that is used but not defined in this APA is to have the meaning assigned to such term in the General Agreement.

I.   Transaction Components:  As of the Effective Date, the parties agree to the following in consideration for the following (the "*Transaction*"):

   1.1   Asset Sale, Transfer, Assignment of Rights:

      A.   SPOP hereby sells to Pasture the Stock of the Companies (the "*Stock*") and hereby transfers the same to Pasture ("*Stock Transfer*");

      B.   To the extent (i) there are any assets of the Companies, its subsidiaries, affiliates or related entities that are not owned or controlled, directly or indirectly, by the Companies (including the entities listed on **Exhibit B**)(the "*Noble Family*"), and (ii) there are any assets of any Noble-related entities at any of the Locations or elsewhere that are not owned or controlled by the Companies ((i) and (ii) together, "*Residual Assets*"), then SPOP hereby assigns and transfers to Pasture the Residual Assets, including the Noble Assets, AR, real estate, equipment and all other assets of the Companies and its subsidiaries, affiliates and related entities.

      C.   In the General Agreement SPOP became entitled to certain rights, such as to the collections, as are specified in the General Agreement (the "*SPOP Rights*").  SPOP transfers, grants and assigns to Pasture all of the SPOP Rights.  Pasture agrees to take on and to monetize such rights to the fullest extent possible, subject to Pasture and the interested stakeholders entering into good faith negotiations with the goal of potentially accelerating any benefits relating to some or all of such rights.

1.2　SPOP's Retention of Liabilities:

A.　In the General Agreement, SPOP agreed to fulfill certain obligations and responsibilities for which Platinum was responsible and as are specified in the General Agreement (including the Nobel-related obligations specified therein) (together, the "*Platinum Obligations*").

B.　Pasture does **not** take on any of the Platinum Obligations, and SPOP agrees to remain responsible for each and every Platinum Obligation.  Further, SPOP shall defend, indemnify and hold harmless Pasture with respect to each and every Platinum Obligation.

C.　Notwithstanding the fact that SPOP is responsible for the Platinum Obligations, Pasture will coordinate with SPOP and will use reasonable efforts to restructure the Platinum Obligations either individually or in a Bankruptcy proceeding.

D.　In conjunction with the restructuring process, SPOP authorizes Pasture to take all actions necessary and to perform all acts that would enable Pasture (if it so determines to do so) to institute proceedings pursuant to Title 11 of the United States Code on behalf SPOP or one or more of the Noble Family for the purpose of restructuring the Platinum Obligations.

E.　If Pasture determines to do so, SPOP authorizes Pasture to engage attorneys and other professionals of Pasture's choosing for the purpose of representing SPOP in this restructuring process. Pasture shall be responsible for and promptly pay on its behalf, all fees and expenses incurred by those professionals in the performance of their duties. SPOP hereby irrevocably appoints Kalman Groner, Zevi Reisman (and other Pasture representatives as Pasture may determine) as authorized signatories, agents and representatives of SPOP for all matters arising from or related to such restructuring process.

F.　In that regard, Pasture shall be 100% responsible for all of SPOP's bankruptcy-related legal fees and the costs of such bankruptcy process.

G.　Also in that regard, Pasture as the owner of the Companies and the Noble Family, shall attempt to use the assets (if any) of the Companies (together with the Noble Family and its and there subsidiaries) to satisfy in the bankruptcy process the Platinum Obligations, which Pasture may structure in the following manner:  Pasture to cause each entity that is part of the Noble Family to satisfy with such entity's assets (if any) the liabilities (if any) that are specific to such entity, and Pasture may structure the restructuring such that only to the extent required by a final ruling of the Bankruptcy court will Pasture have assets (if any) of one entity of the Noble Family be used to satisfy the liabilities of another entity in the Noble Family.

II.　SPOP – Requirements: Upon the signing of this APA:

2.1　SPOP Cooperation:

A.　SPOP acknowledges that Pasture has already engaged, or is planning to engage, professionals in the areas of health-care management, urgent-care management, health-care clinic management, public relations, media marketing,

social media marketing, health-care billing, legal resources, accountants and other potential service providers, subject matter experts and consultants (together, "*Third Party Service Providers*").

B.    SPOP shall cooperate with Pasture and its Third Party Service Providers in any manner as may be reasonably requested by Pasture or its Third Party Service Providers.

C.    SPOP shall cooperate with Pasture and it's public relations consultant to develop written notices and a script as to how to precisely what to say (together, the "*Script*") in respect of the transactions contemplated by this APA to any person or entity that is (i) in anyway a stakeholder of the Companies; (ii) in anyway a stakeholder of any Nobel-related entity; or (iii) a Platinum stakeholder ((i), (ii) and (iii), each a "*Stakeholder*").

D.    Once Pasture finalizes the Script, SPOP shall not deviate in any material way from the Script in any communication with any Stakeholder, whether verbal, electronic or written.

E.    Upon request from Pasture or its Third Party Service Provider, SPOP shall notify in writing and follow up with calls to all Stakeholders in a manner that follows the Script so that Pasture may begin to implement the reorganization and rehabilitation of the Companies and all Noble-related entities.

III.    Additional Agreements:

3.1    SPOP's representations, warranties, covenants and agreements:

A.    From the Platinum Transaction Date to the Effective Date of this APA, SPOP is and has been, the sole stockholder of the Stock, and is authorized to transfer 100% of the Stock and ownership of the Companies to Pasture.

B.    SPOP represents, warrants and makes a continuing covenant that at any time prior to the Effective Date of this APA that SPOP has not taken any action, or refrained from taking any action, that has resulted in or that may result in a material diminution of the value of the Stock, the Residual Assets, the SPOP Rights or any other aspects of the Nobel-related entities.

C.    SPOP acknowledges that it is not an owner of any membership interests in Pasture Medical LLC. Upon request from Pasture from time to time SPOP shall cooperate, and will cause Platinum (in a manner as contemplated by the General Agreement) to cooperate, with Pasture so that Pasture is able to manage and restructure the Companies, its subsidiaries, affiliates or related entities, the Residual Assets and the SPOP Rights, including all Noble-related bank accounts, bookkeeping, tax matters, legal matters, corporate management, and the re-opening of medical facilities/hospitals.

D.    SPOP shall only work through and in coordination with Pasture in respect of any activities related to the Companies, its subsidiaries, affiliates or related entities.

E.    SPOP acknowledges that Pasture will choose one or more Revenue Vendors, which may include the Revenue Vendor with whom SPOP has started to work.

F.    In the event that Platinum now or in the future is in breach of any provision of the General Agreement or violation of any applicable law, SPOP hereby assigns, and shall further assign to Pasture, any claim it may have versus Platinum, and SPOP shall fully cooperate in Pasture's pursuit of such claim.

3.2    SPOP's and Pasture's agreements:

A.    In Section 5 of the Stock Purchase Agreement that is attached to the General Agreement, Platinum (as Seller under such agreement) is obligated to indemnify and hold harmless SPOP in respect of the Noble Debt.  In that regard, SPOP shall pass through that indemnity and hold harmless obligation of Platinum to Pasture, and further, SPOP shall indemnify and hold harmless Pasture and any affiliates of Pasture for any and all expenses, fees, reimbursements, terms, legal actions, debts, and/or conditions and losses they may incur in connection with the Noble Debt.

3.3    Pasture's and SPOP's agreements:

A.    On the date hereof, SPOP shall deliver to Pasture stock powers duly executed in favor of Pasture conveying to Pasture title to the Stock, duly executed by Companies.

B.    Pasture accepts full authority and control of the Companies' business operations at all Locations and shall have the license and authority to act on behalf of Noble. If Pasture chooses, they have the ability and authority to operate under a new name or keep existing. If Pasture chooses, to restructure the Companies obligations it may seek any and all available legal and/or equitable available solutions.  SPOP has no authority related to any of the foregoing.

C.    With the transfer of the Companies' Stock to Pasture, SPOP's signing authority will be removed and Pasture's signing authority will be added to all accounts, of whatever kind. As of the Effective Date of this APA, SPOP shall cease making expenditures on behalf of the Companies without Pasture's prior approval.

D.    SPOP shall cause the Companies to produce, execute and deliver all documents, as well as do or cause to be done all acts necessary for the carrying out of the Stock transfer, as requested by Pasture, and in no case will SPOP allow Companies take longer than 3 calendar days to comply with Pasture's reasonable requests to produce documents. These requests must be made in writing, either electronically or by mail.

IV.    Choice of Law, etc. among SPOP and Pasture.

A.    This agreement shall be governed by the choice-of-law principles of the State of New York. Any controversy or claim arising out of or relating to this agreement or the breach of it which is not amicably settled between the parties shall be settled by mediation in accordance with the rules then in existence by the American Arbitration Association with hearings to taking place in New Jersey. Any award made may include all commissions or fees received as a result of business conducted pursuant to this agreement, plus all mediation costs, attorney's fees, and other charges and damages deemed fair by the mediator.

B.    If the dispute cannot then be resolved through mediation, the Parties agree to non-jury litigation. THE PARTIES HEREBY UNCONDITIONALLY WAIVE THEIR RIGHT TO A JURY TRIAL OF ANY AND ALL CLAIMS OR CAUSES OF ACTION ARISING FROM OR RELATING TO THEIR RELATIONSHIP. THE PARTIES ACKNOWLEDGE THAT A RIGHT TO A JURY IS A CONSTITUTIONAL RIGHT, THAT THEY HAVE HAD AN OPPORTUNITY TO CONSULT WITH INDEPENDENT COUNSEL, AND THAT THIS JURY WAIVER HAS BEEN ENTERED INTO KNOWINGLY AND VOLUNTARILY BY ALL PARTIES TO THIS AGREEMENT. IN THE EVENT OF LITIGATION, THIS AGREEMENT MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.

C.    All parties shall keep strictly confidential and shall not disclose, or cause or permit to be disclosed, to any person or entity, (i) any information about the potential sale of all or a portion of all of the assets or liabilities of the Companies, except that both parties may make such disclosure if it has received the reasonable advice of its outside counsel that such disclosure must be made in order that such party does not commit a violation of law, and (ii) the Confidential Information, except to those officers, employees or other authorized agents and representatives and professional consultants of such party to whom disclosure is reasonably necessary in connection with the Transaction and who shall agree to be bound by the terms of this Agreement, and except as otherwise consented to in writing by the non- disclosing party. Both parties shall take all actions reasonably necessary to ensure that the Confidential Information remains strictly confidential and is not disclosed to or seen, used, or obtained by any person or entity except in accordance with the terms of this Agreement. Both parties agree not to contact any employees, customers, or suppliers of the other party or its affiliates with respect to the Transaction or for the purpose of obtaining information for use in evaluating the Transaction, without the other party's prior written consent. All parties further agree that all inquiries, requests for information, and other communications concerning the transaction shall be made unless otherwise advised or permitted by all parties.

D.    No failure or delay on the part of either party in exercising any right hereunder shall operate as a waiver of, or impair, any such right. No single or partial exercise of any such right shall preclude any other or further exercise thereof or the exercise of any other right. No waiver of any such right shall be effective unless given in writing. No waiver of any such right shall be deemed a waiver of any other right hereunder.

E.    This Agreement supersedes and extinguishes all previous drafts, agreements, arrangements, and understandings between the parties, whether written or oral, relating to this subject matter. The parties acknowledge and agree they have not relied on any representations except those set out in this Agreement.

F.    All notices, consents, waivers, and other communications under this Agreement must be in writing (i) delivered by hand, (ii) [reserved], (iii) by electronic mail (email) or (iv) sent by a nationally recognized overnight delivery service for next day delivery, in each case to the appropriate addresses set forth below (or to such other addresses and telecopier numbers as a party may designate by notice to the other parties):

SPOP:                SAINT PIO OF PIETRELCINA LLC

Attention: Clifford B Sullivan
15758 SE HWY 224, Unit 116
Damascus, OR 97089
Email: theinvestmentguy@gmail.com

Pasture:       Pasture Medical LLC
Attention: K. Groner
30 N Gould St, STE 4000
Sheridan, WY 82801
Email: kalman@kangaroopartners.com

Pasture – with a copy to: Gary S. Greenstein ESQ PC
Attention: K. Groner
8 Roven Road
Monsey, NY 10952
Email: kalman@kangaroopartners.com

c/o each of SPOP and Pasture  as noted above

G.     All notices will be deemed effective upon receipt by the other party. A notice which is (i) hand delivered shall be deemed received upon delivery, (ii) sent by overnight delivery service shall be deemed received on the next business day following delivery of such notice to the overnight delivery service, (iii) [reserved], and (iv) sent by email is deemed to be received upon receipt of confirmation of receipt by the addressee.

H.     This Agreement and any amendments hereto may be executed and delivered by facsimile or other electronic transmissions, in any number of counterparts, each of which will be deemed to be an original and all of which will constitute one agreement that binds all the parties hereto, notwithstanding that all parties are not signatories to the same counterpart.

[signatures follow]

In Witness whereof, the parties have signed this APA as of the Effective Date noted above:

SAINT PIO OF PIETRELCINA LLC         PASTURE MEDICAL LLC

By:   Cliff Sullivan (Feb 10, 2023 12:35 PST)      By:   Kalman Groner (Feb 10, 2023 15:50 EST)
Name:   Cliff Sullivan                Name:   Kalman Groner
Title:   Owner                     Title:   Chief Executive Manager

Noble Health Corp. and Noble Health Services, Inc.

By:   Cliff Sullivan (Feb 10, 2023 12:35 PST)
Name:   Cliff Cliff Sullivan

Owner

Title:

Exhibit A – The General Agreement (with its Exhibits and Attachments)
Exhibit B – The list of subsidiaries included in the Noble Family

ASSIGNMENT OF COMPANY STOCK

IN

NOBLE HEALTH CORP.

&

NOBLE HEALTH SERVICES, INC.

THIS ASSIGNMENT (the "*Assignment*") is entered into as of this 28th day of December 2022 by and between SAINT PIO OF PIETRELCINA LLC, an Oregon Limited Liability Company ("*SPOP*" or "*Assignor*") and Pasture Medical LLC, a Wyoming limited liability company ("*Pasture*" or "*Assignee*").

This Assignment is attached to the Asset Purchase Agreement dated as of the date hereof between inter alia SPOP and Pasture (the "*APA*").  A capitalized term that is used but not defined in this Assignment Agreement is to have the meaning assigned to such term in the APA.

RECITALS:

A.      Assignor currently owns a one hundred percent (100%) of the stock of Noble Health Corp. and Noble Health Services, Inc. (collectively referred to as the "*Companies*") registered in the State of Missouri. as listed and described in the Stock Purchase Agreement ("*SPA*") dated and executed on December 7th, 2022, by Platinum and SPOP (attached to the General Agreement).

B.      Pursuant and subject to the terms and conditions of the Asset Purchase Agreement among the Assignor, Assignee, Pasture, and the Companies: Assignor desires to transfer and convey one hundred percent (100%) of the SPOP's interest in the Companies, that is, the stock of the Companies, to the Assignee (the "*Transferred Interest*").

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor does hereby, subject to the APA, convey, assign and transfer to Assignee all of Assignor's right, title, and interest in and to the Stock of the Companies, including, but not limited to, all assets, accounts payable, accounts receivable (listed but not limited to the attached EXHIBIT) capital accounts, distributions, profits and other economic benefits of any kind or nature to which Assignor may now or hereafter be entitled under that certain Stock Purchase Agreement of the dated contemporaneously herewith. Upon the execution and delivery of this Assignment, ownership of the Companies shall be as follows:

Pasture Medical LLC
30 N Gould St, STE 4000
Sheridan, WY 82801
100% interest/ownership of Stock

Assignee hereby accepts such sale, conveyance, assignment, and transfer of the same.

[Signatures On Next Page]

IN WITNESS WHEREOF, the undersigned has duly executed this Assignment as of the date first written above.

SAINT PIO OF PIETRELCINA LLC - assignor

By: _Cliff Sullivan (Feb 10, 2023 12:35 PST)_
Name: Cliff Sullivan
Title: Owner

PASTURE MEDICAL LLC - assignee

By: _Kalman Groner (Feb 10, 2023 15:50 EST)_
Name: **Kalman Groner**
Title: Chief Executive Manager

Noble Health Corp. and Noble Health Services, Inc.

By: _Cliff Sullivan (Feb 10, 2023 12:35 PST)_
Name: Cliff Sullivan
Title: owner

## CERTIFICATE

The undersigned does hereby certify that:

      1.      The undersigned constitutes the sole Stockholder of Noble Health Corp. and Noble Health Services, Inc. and their subsidiary and related entities (listed with addresses in the attached EXHIBIT) registered, organized, and existing under the laws of the State of Missouri (collectively referred to as the "*Companies*").

      2.      The Companies are in good standing under the laws of the State of Missouri and is duly qualified to do business in the State of Missouri as and to the extent required by law.

      3.      No suit or proceeding for the dissolution, annulment, or liquidation of the Companies have been instituted.

      4.      Attached hereto as EXHIBITS is a true, correct, and complete copy of the Asset Purchase Agreement, Resolution, and Assignment of Stock & Ownership Interest adopted by the Stockholder of the Companies on the same date hereof, and the Resolutions have not been rescinded, revoked, or modified in any respect and the same are now in full force and effect.

      IN WITNESS WHEREOF, the undersigned, being all of the members of the Companies, have executed this certificate as of December 28, 2022.

SAINT PIO OF PIETRELCINA LLC

By: _____
        Cliff Sullivan (Feb 10, 2023 12:35 PST)
Name:  Cliff Sullivan
Title:  Owner

RESOLUTIONS ADOPTED BY SOLE STOCKHOLDER OF
Noble Health Corp. and Noble Health Services, Inc. and their subsidiary and
related entities
(Listed with addresses in the attached EXHIBIT)

WHEREAS, SAINT PIO OF PIETRELCINA LLC ("*SPOP*"), the sole owner of 100% of the stock of Noble Health Corp. and Noble Health Services, Inc. and their subsidiaries and related entities (Listed with addresses in the attached EXHIBIT and referenced here as the "*Companies*"), is desirous of conveying a 100% of the stock of the Companies to Pasture Medical LLC ("*Pasture*"), a Limited Liability Company in the state of Wyoming located at 30 N. Gould Street, Suite 4000, Sheridan, WY 82801, in consideration of the matters specified and described in in the APA and as listed in the attached EXHIBITS.

WHEREAS, SPOP and Pasture are desirous of a new business arrangement. Upon execution of the Asset Purchase Agreements (attached) and the matters described therein for Noble, Pasture shall become the sole stockholder of the Companies, as more particularly set forth therein.

NOW, THEREFORE, BE IT RESOLVED, that SPOP is authorized to transfer 100% of the stock and ownership of the Companies to Pasture. Each of SPOP and Pasture agree to, and in connection therewith to make and execute all papers and instruments necessary to accomplish the above-referenced transaction, including without limitation all sales contracts, settlement statements, assignments, and any and all other instruments or documents that may be necessary or desirable to successfully conduct the business of the Companies, and that SPOP as Stockholder and Officer of the Companies, is authorized to execute all such documents;

FURTHER RESOLVED, that all prior action taken by any officer or representative of the Companies in connection with the above-described sale is hereby approved and ratified.

SAINT PIO OF PIETRELCINA LLC
As sole stockholder of the Companies

By: _____
Cliff Sullivan (Feb 10, 2023 12:35 PST)
Name: Cliff Sullivan
Title: Owner

Exhibit A
The General Agreement between Platinum and SPOP
[begins on next page]

# PLATINUM MEDICAL MANAGEMENT, INC.

## GENERAL AGREEMENT

**THIS GENERAL AGREEMENT** made as of this 7ᵗʰ day of December 2022 (the "Execution Date"),
**BETWEEN:**

Platinum Medical Management, Inc., of 801 S HWY 78, Suite 307, WYLIE TX 75098 ("PMM")
- AND –

**SAINT PIO OF PIETRELCINA LLC** of 15758 SE HWY 224, Unit 116, Damascus, OR 97089 ("SPOP")

## Transaction Description

The following terms and conditions have been agreed upon by both parties, as follows:

i.   SPOP agrees to purchase the Noble properties per the Purchase Agreements, dated December 7ᵗʰ2022 (attached for signature). Upon execution of this agreement, SPOP agrees to assume all debt and all responsibility for the AR, AP, real estate, and equipment. A Dropbox folder labeled "NOBLE 12.07.2022" that contains all known documents, and files for Noble, including but not limited to a list of Equipment, Title work, Survey, all known A/P, A/R, legal work, notices, and corporate documents has been sent to SPOP. This Dropbox folder described above has been reviewed, received, and accepted by SPOP.

ii.  A/P payments shall be in whole or in part and shall be made directly to the vendors and creditors. The execution of said documents, paying the seller a $1.00 purchase price, and the terms/conditions below:

    1. Immediate transfer of $250,000.00 to PMM into a bank account of their choice. This payment shall be a partial reimbursement for Noble expenses previously paid for by PMM.

    2. An additional $250,000.00 payment to PMM into a bank account of their choice, shall be made/transferred within 10 days of the execution of this agreement, for a total of $500,000.00 initial payment to PMM, along with the following payments to be made:

        a. Within 30 days of opening Audrain Hospital, SPOP agrees to pay 500K to PMM into a bank account of their choice as a partial reimbursement. This is for Noble expenses previously paid for and for assisting in the opening of the hospital by PMM.

        b. Within 30 days of opening Calloway Hospital, SPOP agrees to pay 500K to PMM into a bank account of their choice as a partial reimbursement. This is for Noble expenses previously paid for and for assisting in the opening of the hospital by PMM.

iii. Upon execution of these documents and transfer of funds, as described above, SPOP will immediately begin the process of collections of accounts receivable and the payment of accounts payable, with the assistance of PMM.

    1. The <u>collections</u> shall include the following: insurance, tax Credits, private pay, and government (HRSA, ERC, and Cost Report) for Noble Health Corp and Noble Health Services, Inc as outlined in the Stock Purchase Agreement, including but not limited to the following:

        a. SPOP agrees to immediately begin communication with revenue cycle vendors to negotiate and pay vendors.

        b. It is the discretion of SPOP to choose the Revenue Vendor of their choice.

        c. As part of the collection process, PMM shall assist SPOP with collections as defined above. SPOP agrees to pay PMM $500,000.00 once there has been $10,000,000.00 collected.

CONFIDENTIALITY NOTICE: This document and the documents accompanying it contain confidential and legally privileged information which isintended only for the use of the addressee. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or reliance on the contents of this information is prohibited.

# PLATINUM MEDICAL MANAGEMENT, INC.

A PLATINUM CO.

2. The payments for accounts payable will include the following:
   a. Current payroll liabilities,
   b. A payment plan 5538 for payroll taxes
   c. Utility payments - gas, electric, and other utility payments

   d. Misc. other operating expenses needed to maintain the hospitals and properties and keep them functioning properly/operational as determined and at the discretion of SPOP,

iv. PMM agrees to assist SPOP for the first three months from the date of execution of this document on behalf of Noble with the following terms and conditions:
   a. Assist with bookkeeping, legal matters (MCA Lenders and Lawsuits), corporate management, and the opening of medical facilities/hospitals.
   b. SPOP agrees to pay actual direct costs that PMM incurs.

v. Platinum Medical Management, Inc. the Sole Stockholder, is authorized to transfer 100% of the stock and ownership of the Company to SPOP (See Resolution attached for execution for further details).

vi. SPOP, including its officers, directors, its affiliates, and their respective successors agrees to indemnify and hold harmless PMM, its officers and directors, employees and its affiliates and their respective successors and assigns, and each other person, if any, who controls any thereof, against any loss, liability, claim, damage and expense whatsoever (including, but not limited to, any and all expenses whatsoever reasonably incurred in investigating, preparing or defending against any litigation commenced or threatened or any claim whatsoever) arising out of or based upon any false representation or warranty or breach or failure by the undersigned to comply with any covenant or agreement made by the undersigned herein or in any other document furnished by the undersigned to any of the foregoing in connection with this transaction and attached agreements.

## Binding

This Agreement creates a binding agreement between the Parties and will be considered enforceable. The terms and conditions of this document will supersede any terms and conditions of any previous agreement. In the event, SPOP does not provide all money due in the allotted time, the purchase, and responsibilities are binding. It is the sole discretion of PMM to exercise this right to Lien or file a breach of contract, if PMM chooses to do so, all other parts of the agreement, shall remain binding.

This Agreement accurately reflects the as agreed between the Parties, signed on this date: __Dec 7, 2022__

Dec 7, 2022

Per: Cliff Sullivan (Dec 7, 2022 16:53 PST) _____ (Seal)
Clifford B. Sullivan,
SAINT PIO OF PIETRELCINA LLC

Per: Ryan Cole (Dec 7, 2022 18:36 CST) _____ (Seal)
Ryan Cole, CEO for
Platinum Medical Management, Inc. &
Platinum Team Management, Inc

CONFIDENTIALITY NOTICE: This document and the documents accompanying it contain confidential and legally privileged information which is intended only for the use of the addressee. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or reliance on the contents of this information is prohibited.

# PLATINUM MEDICAL MANAGEMENT, INC.

## STOCK PURCHASE AGREEMENT

THIS STOCK PURCHASE AGREEMENT ("Agreement") is entered into as of December 7th, by and between:

**SAINT PIO OF PIETRELCINA LLC,** a Limited Liability Company in the state of Oregon located at 15758 SE HWY 224, Unit 116, Damascus, OR 97089 ("SPOP" or "Buyer"), and

Platinum Medical Management, Inc. (Formerly: Platinum Neighbors, Inc.), a Texas corporation ("PMM") and the sole stockholder of the Company (collectively, the "**Sellers**") for the transfer of all of the outstanding capital stock and ownership of the Companies (the "**Stock**") in Noble Health Corp. ("**NHC**"), Noble Health Services, Inc. ("**NHS**"), and their DBAs as registered in the state of Missouri (NHC and NHS, collectively will be referred to as the **Company**"), which consists of 2 hospitals and 7 clinics.

Seller desires to transfer, and SPOP desires to purchase, the Stock, resulting in SPOP owning the Company.

### AGREEMENT

The terms and conditions are as follows:

1.     The Company owns the following entities: Noble Health Management, LLC, a Missouri limited liability company, Noble People, LLC, a Missouri limited liability company, Noble Health Real Estate, LLC, a Missouri limited liability company, Noble Health Real Estate I, LLC, a Missouri limited liability company, and Noble Health Real Estate II, LLC, a Missouri limited liability company (together with the Company, "Noble" or "Provider"). Noble owns and/or manages      medical care facilities referred to as follows Audrain Community Hospital; 620 East Monroe Street, Mexico, Missouri 65265; Callaway Community Hospital; 10 South Hospital Drive, Fulton, MO 65251; Callaway Community Clinics; 850 North Hospital Drive, Fulton, Missouri 65251; Pain Management & Ortho; 615 E. Promenade (Stribling Bldg), Mexico, MO 65265; Cancer Center; 713 E. Jackson (Cancer Center Bldg), Mexico, MO 65265; Corner Stone Clinic; 605 E. Promenade, Suite A, Mexico, MO 65265; Vandalia Medical Clinic; 204 West Washington Street, Vandalia, Missouri 63382; Montgomery City Medical Clinic; 240 North Pickering Street, Montgomery City, Missouri 63361; Wellsville Medical Clinic; 111 West Bates Street, Wellsville, Missouri 63384; Perry Medical Clinic; 1223 Main Street, Perry, Missouri 63462; Clinic Admin Office; 626 E. Summit Street, Suite K, Mexico, Missouri 65265; and Women's Health; 626 E. Summit Street, Suite J, Mexico, Missouri 65265, and any other properties owned or operated by Company (the "Locations").

2.     On the date hereof, SPOP shall purchase and accept from Sellers, and Sellers shall sell, transfer and assign to SPOP all of the Stock and assets.

3.     SPOP will pay one dollar and zero cents ($1.00) along with the reimbursements, fees, terms and conditions as outlined in the General Agreement (attached). Immediately following the execution of this agreement (by all parties), the following actions shall take place:
       a.     Assignment of Stock Agreement shall be executed by both parties.
       b.     Form 126 for Noble shall be executed by Cliff B Sullivan and SPOP for ownership, removing Platinum Medical Management, Ryan Cole, and Brandon Deiters.

CONFIDENTIALITY NOTICE: This document and the documents accompanying it contain confidential and legally privileged information which sintended only for the use of the addressee. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or reliance on the contents of this information is prohibite

801 S HWY 78, Suite 307 - Wylie TX 75098

Page 1 of 5

# PLATINUM MEDICAL MANAGEMENT, INC.

    c.    PMM shall assign all Noble Assets, AR, real estate, equipment, and AP to SPOP.

    d.    SPOP is responsible, liable and owner of all A/R and all A/P.

    e.    SPOP shall notify and make necessary payment arrangements to A/P vendors, bank and defend any legal matters

    f.    SPOP shall assume responsibility for the Company as the new owner.

    g.    This Agreement, along with the General Agreement, and attachments shall make up the entire purchase and relationship between both parties.

4. This Agreement along with the General Agreements shall make up the total agreement.

5. Seller shall indemnify and hold harmless SPOP and any affiliates of SPOP for any and all expenses, fees, reimbursements, terms, legal actions, debts, and/or conditions and losses they may incur in connection with the Noble Debt.

6. Seller agrees to assist Buyer for the first three months from the date of execution of this document on behalf of the Company on the following business: bookkeeping, and legal matters (MCA Lenders and Lawsuits). Any time and expenses that have been incurred by the Seller in connection with the above-stated matters, shall be the responsibility of the Buyer.

7. On the date hereof, Seller shall deliver to SPOP stock powers duly executed in favor of SPOP conveying to SPOP title to the Stock, duly executed by the Sellers.

8. Upon transfer of the Stock to SPOP, Business Operations will remain in the name of the Company, at SPOP's sole discretion.

9. SPOP accepts full authority and control of the Company's business operations at all Locations and shall have the license and authority to act on behalf of Noble. If SPOP chooses, they have the ability and authority to operate under a new name or keep existing. PMM has no authority.

10. With the transfer of the Company's Stock to SPOP, PMM including all existing members, signing authority will be removed and SPOP's signing authority added to all accounts, of whatever kind. At the above date of this Agreement, Seller will cease making expenditures on behalf of the Company without SPOP's prior approval.

11. Company will produce, execute and deliver all documents, as well as do or cause to be done all acts necessary for the carrying out of the Stock transfer, as requested by SPOP, and in no case will Company take longer than 3 calendar days to comply with SPOP's reasonable requests to produce documents. These requests must be made in writing, either electronically or by mail.

12. This agreement shall be governed by the choice-of-law principles of the State of Texas. Any controversy or claim arising out of or relating to this agreement or the breach of it which is not amicably settled between the parties shall be settled by mediation in accordance with the rules then in existence by the American Arbitration Association with hearings to taking place in New Jersey. Any award made may include all commissions or fees received as a result of business conducted pursuant to this agreement, plus all mediation costs, attorney's fees, and other charges and damages deemed fair by the mediator.

CONFIDENTIALITY NOTICE: This document and the documents accompanying it contain confidential and legally privileged information which isintended only for the use of the addressee. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or reliance on the contents of this information is prohibite

# PLATINUM MEDICAL MANAGEMENT, INC.

13.  Both parties shall keep strictly confidential and shall not disclose, or cause or permit to be disclosed, to any person or entity, (i) any information about the potential sale of all or a portion of all of the assets or liabilities of the Company, except that both parties may make such disclosure if it has received the reasonable advice of its outside counsel that such disclosure must be made in order that such party does not commit a violation of law, and (ii) the Confidential Information, except to those officers, employees or other authorized agents and representatives and professional consultants of such party to whom disclosure is reasonably necessary in connection with the Transaction and who shall agree to be bound by the terms of this Agreement, and except as otherwise consented to in writing by the non-disclosing party. Both parties shall take all actions reasonably necessary to ensure that the Confidential Information remains strictly confidential and is not disclosed to or seen, used, or obtained by any person or entity except in accordance with the terms of this Agreement. Both parties agree not to contact any employees, customers, or suppliers of the other party or its affiliates with respect to the Transaction or for the purpose of obtaining information for use in evaluating the Transaction, without the other party's prior written consent. All parties further agree that all inquiries, requests for information, and other communications concerning the transaction shall be made unless otherwise advised or permitted by all parties.

14.  If the dispute cannot then be resolved through mediation, the Parties agree to non-jury litigation.

      THE PARTIES HEREBY UNCONDITIONALLY WAIVE THEIR RIGHT TO A JURY TRIAL OF ANY AND ALL CLAIMS OR CAUSES OF ACTION ARISING FROM OR RELATING TO THEIR RELATIONSHIP. THE PARTIES ACKNOWLEDGE THAT A RIGHT TO A JURY IS A CONSTITUTIONAL RIGHT, THAT THEY HAVE HAD AN OPPORTUNITY TO CONSULT WITH INDEPENDENT COUNSEL, AND THAT THIS JURY WAIVER HAS BEEN ENTERED INTO KNOWINGLY AND VOLUNTARILY BY ALL PARTIES TO THIS AGREEMENT. IN THE EVENT OF LITIGATION, THIS AGREEMENT MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.

15.  No failure or delay on the part of either party in exercising any right hereunder shall operate as a waiver of, or impair, any such right. No single or partial exercise of any such right shall preclude any other or further exercise thereof or the exercise of any other right. No waiver of any such right shall be effective unless given in writing. No waiver of any such right shall be deemed a waiver of any other right hereunder.

16.  This Agreement includes the following documents/attachments: the General Agreement, Assignment of Stock, Resolution, and Form 126. In addition to these documents, there is a Dropbox folder labeled "NOBLE 12.07.2022" that contains all known documents, and files for Noble, including but not limited to a list of Equipment, Title work, Survey, all known A/P, A/R, legal work, notices, and corporate documents. The Dropbox folder described above has been reviewed, received, and accepted by the Buyer. All the documents and electronic files mentioned above contain the entire agreement and a complete understanding of the parties. This Agreement supersedes and extinguishes all previous drafts, agreements, arrangements, and understandings between the parties, whether written or oral, relating to this subject matter. The parties acknowledge and agree they have not relied on any representations except those set out in this Agreement.

CONFIDENTIALITY NOTICE: This document and the documents accompanying it contain confidential and legally privileged information which isintended only for the use of the addressee. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or reliance on the contents of this information is prohibited

# PLATINUM MEDICAL MANAGEMENT, INC.

17.    All notices, consents, waivers, and other communications under this Agreement must be in writing (i) delivered by hand, (ii) sent by registered mail, return receipt requested, or (iii) by electronic mail (email) or (iv) sent by a nationally recognized overnight delivery service for next day delivery, in each case to the appropriate addresses and telecopier numbers set forth below (or to such other addresses and telecopier numbers as a party may designate by notice to the other parties):

Sellers:            Platinum Medical Management, Inc.
                    801 TX-78, Suite 307
                    Wylie, TX 75098
                    Attention: President
                    Email:ryan@platinumteam.org

Buyer:              SAINT PIO OF PIETRELCINA LLC
                    Attention: Clifford B Sullivan
                    15758 SE HWY 224, Unit 116
                    Damascus, OR 97089
                    Email: theinvestmentguy@gmail.com

All notices will be deemed effective upon receipt by the other party. A notice which is (i) hand delivered shall be deemed received upon delivery, (ii) sent by overnight delivery service shall be deemed received on the next business day following delivery of such notice to the overnight delivery service, (iii) sent by registered mail is deemed received upon the date of receipt set forth in the return receipt, and (iv) sent by email is deemed to be received upon receipt of confirmation of receipt by the addressee.

18.    This Agreement and any amendments hereto may be executed and delivered by facsimile or other electronic transmissions, in any number of counterparts, each of which will be deemed to be an original and all of which will constitute one agreement that binds all the parties hereto, notwithstanding that all parties are not signatories to the same counterpart.

[Remainder of page intentionally left blank; Signature page follows.]

CONFIDENTIALITY NOTICE: This document and the documents accompanying it contain confidential and legally privileged information which isintended only for the use of the addressee. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or reliance on the contents of this information is prohibite

# PLATINUM MEDICAL MANAGEMENT, INC.

The Parties agree to the terms of this Agreement.

**SELLERS:**

**Platinum Medical Management, Inc.**

By: _Ryan cole (Dec 7, 2022 18:44 CST)_

Name: Ryan cole

Title: CEO

**COMPANY:**

**Noble Health Services, Inc.**

By: _Ryan cole (Dec 7, 2022 18:36 CST)_

Name: Ryan Cole

Title: Managing Member

**Noble Health Corp.**

By: _Ryan cole (Dec 7, 2022 18:36 CST)_

Name: Ryan Cole

Title: Managing Member

**BUYER:**

**SAINT PIO OF PIETRELCINA LLC**

By: _Cliff Sullivan (Dec 7, 2022 16:53 PST)_

Name: Clifford B. Sullivan

Title: Owner

CONFIDENTIALITY NOTICE: This document and the documents accompanying it contain confidential and legally privileged information which isintended only for the use of the addressee. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or reliance on the contents of this information is prohibite

# ASSIGNMENT OF COMPANY STOCK IN NOBLE HEALTH CORP. & NOBLE HEALTH SERVICES, INC.

**THIS ASSIGNMENT** (the "Assignment") is entered into as of this 7th day of December 2022 by and between PLATINUM MEDICAL MANAGEMENT, INC, a Texas Corporation ("Assignor"), and **SAINT PIO OF PIETRELCINA LLC**, an Oregon Limited Liability Company ("SPOP" or "Assignee").

## RECITALS:

       A.     Assignor currently owns a one hundred percent (100%) interest in Noble Health Corp. and Noble Health Services, Inc. and their entities (collectively referred to as the "Company") registered in the State of Missouri. as listed and described in the **Stock Purchase Agreement** ("SPA") dated and executed on December 7th, 2022, by PMM and SPOP.

       B.     Pursuant and subject to the terms and conditions of the SPA among the Assignor, Assignee, and the Company, Assignor desires to transfer and convey one hundred percent (100%) of the Seller Interest to Assignee (the "Transferred Interest").

       **NOW, THEREFORE,** for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor does hereby, subject to the SPA, convey, assign and transfer to Assignee all of Assignor's right, title, and interest in and to the Transferred Interest, including, but not limited to, all assets, accounts payable, accounts receivable (listed but not limited to the attached EXHIBIT) capital accounts, distributions, profits and other economic benefits of any kind or nature to which Assignor may now or hereafter be entitled under that certain Stock Purchase Agreement of the dated contemporaneously herewith. Upon the execution and delivery of this Assignment, ownership of the Company shall be as follows:

**SAINT PIO OF PIETRELCINA LLC**          100% interest/ownership of Stock
15758 SE HWY 224
Unit 116
Damascus, OR 97089

       Assignee hereby accepts such sale, conveyance, assignment, and transfer of the Interest subject to the terms of the SPA.

[Signatures On Next Page]

IN **WITNESS WHEREOF,** the undersigned has duly executed this Assignment as of the date first written above.


ASSIGNOR:
PLATINUM MEDICAL MANAGEMENT, INC.
On behalf of NOBLE HEALTH CORP., NOBLE HEALTH SERVICES, AND THEIR
AFFILIATED COMPANIES as listed in the SPA described above.

BY: _Ryan cole (Dec 7, 2022 18:36 CST)_____
NAME: Ryan cole
TITLE: CEO


ASSIGNEE:
**SAINT PIO OF PIETRELCINA LLC**

BY: _Cliff Sullivan (Dec 7, 2022 16:53 PST)_____
NAME: Cliff Sullivan

TITLE: Owner


CONSENTED TO BY THE COMPANY:

BY: _Ryan cole (Dec 7, 2022 18:36 CST)_____
NAME: Ryan cole
TITLE: CEO

## CERTIFICATE

The undersigned does hereby certify that:

      1.      The undersigned constitutes the sole Stockholder with all ownership interests in Noble Health Corp. and Noble Health Services, Inc. and their entities (Listed with addresses in the attached EXHIBIT) registered, organized, and existing under the laws of the State of Missouri (collectively referred to as the "Company").

      2.      The Company is in good standing under the laws of the State of Missouri and is duly qualified to do business in the State of Missouri as and to the extent required by law.

      3.      No suit or proceeding for the dissolution, annulment, or liquidation of the Company has been instituted.

      4.      Attached hereto as EXHIBITS is a true, correct, and complete copy of the Stock Purchase Agreement, Resolution, and Assignment of Stock & Ownership Interest adopted by the Stockholder of the Company on the same date hereof, and the Resolutions have not been rescinded, revoked, or modified in any respect and the same are now in full force and effect.

      IN WITNESS WHEREOF, the undersigned, being all of the members of the Company, have executed this certificate as of _Dec 7, 2022_____

MEMBER:

BY: _Ryan Cole (Dec 7, 2022 18:36 CST)_____

Name: Ryan Cole

Its: Member

## RESOLUTIONS ADOPTED BY THE MEMBER OF
## Noble Health Corp. and Noble Health Services, Inc. and their entities
(Listed with addresses in the attached EXHIBIT)

**WHEREAS,** Platinum Medical Management, Inc., the sole member of 100% of the membership **Noble Health Corp. and Noble Health Services, Inc. and their entities** (Listed with addresses in the attached EXHIBIT and referenced here as the "Company"), is desirous of conveying a 100% membership interests in the Company to **SAINT PIO OF PIETRELCINA LLC,** a Limited Liability Company in the state of Oregon located at 15758 SE HWY 224, Unit 116, Damascus, OR 97089 ("SPOP"), in consideration of SPOP's assumption of all liabilities concerning the Company as described in the SPA and as listed in the attached EXHIBITS.

**WHEREAS,** Platinum Medical Management, Inc. and SPOP are desirous of a new business arrangement. Upon execution of the purchase agreements (attached) and the payments made as outlined in the General Agreement for Noble, SPOP shall become the Sole Stockholder of the Company, as more particularly set forth therein.

**NOW, THEREFORE, BE IT RESOLVED,** that Platinum Medical Management, Inc. is authorized to transfer 100% of the stock and ownership of the Company to SPOP. Platinum Medical Management, Inc. and SPOP agree to, and in connection therewith to make and execute all papers and instruments necessary to accomplish the above-referenced transaction, including without limitation all sales contracts, settlement statements, assignments, and any and all other instruments or documents that may be necessary or desirable to successfully conduct the business of the Company, and that Platinum Medical Management, Inc., Member/Officer of the Company, is authorized to execute all such documents;

**FURTHER RESOLVED,** that all prior action taken by any officer or representative of the Company in connection with the above-described sale is hereby approved and ratified.